472 P.2d 375

Jack POPE, Individually and in behalf of Lydick Roofing Company of Albuquerque, Plaintiff-Appellant and Cross-Appellee,

v.

LYDICK ROOFING COMPANY OF ALBUQUERQUE, a New Mexico Corporation, Lloyd A. Fry Roofing Company, a Delaware Corporation, Lloyd A. Fry and Joe Lydick, Defendants-Appellees,

Lydick Roofing Company of Albuquerque, Defendant-Counterclaimant and Cross-Appellant.

No. 8835.

Supreme Court of New Mexico.

June 22, 1970.

John C. O'Brien, Albuquerque, for appellants.

Rodey, Dickason, Sloan, Akin & Robb, John P. Eastham, Robert G. McCorkle, Albuquerque, for appellees.

ON REHEARING

PER CURIAM.

Upon granting of the motion for rehearing, the opinion formerly filed is withdrawn and the following substituted in lieu thereof:

OPINION

Before any questions concerning the merits of this litigation can be reached, plaintiff-appellant complains that the trial court erred in several rulings wherein process was quashed. The defendants-appellees, in addition to Lydick Roofing Company of Albuquerque, a New Mexico corporation (hereinafter referred to as "Lydick, Albuquerque"), which is not involved in the questions concerning the validity of service of process, are Lydick, Inc., a Texas corporation not authorized to do business in New Mexico; Lloyd A. Fry Roofing Company, a Delaware corporation not authorized to do business in New Mexico (hereinafter referred to as "Fry Company"), and Lloyd A. Fry (hereinafter referred to as "Fry"), and Joe Lydick (hereinafter referred to as "Lydick"), both non-residents of New Mexico.

■ Plaintiff's first point is addressed to the trial court's action in quashing service on Fry by publication. Admittedly, the proceeding whereby plaintiff sought a money judgment against Fry is an in personam action. In State ex rel. Pavlo v. Scoggin, 60 N.M. 111, 287 P.2d 998 (1955), we held that substituted service could be had only in in rem or quasi in rem proceedings. When that case was decided we had no provision for substituted service except by publication (§ 21–1–1(4) (g), N.M.S.A. 1953), or by personal service outside the state (§ 21–1–1(4) (k), N.M.S.A.1953) which was specifically provided to be the "equivalent to publication * * *." Accordingly, it would seem clear that service by publication, as attempted here, could not have the effect of giving the court jurisdiction over Fry in this in personam action. See Sullivan v. Albuquerque Nat. Trust & Savings Bank of Albuquerque, 51 N.M. 456, 188 P.2d 169 (1947).

■ Having been unsuccessful in sustaining jurisdiction obtained through compliance with § 21–1–1(4) (g), supra, plaintiff undertook to have Fry served personally in Illinois under the provisions of § 21–3–16, N.M.S.A.1953. Point II involved the validity of this service. The record discloses that on October 31, 1968, a certificate of service, subscribed and sworn to by a deputy sheriff of Cook County, Illinois, was filed, stating that on February 14, 1968, he served a summons and copy of complaint in the cause upon Lloyd A. Fry, Sr. On December 30, 1968, by special appearance, Lloyd A. Fry, Sr., moved to quash the affidavit of service on the ground he had never in fact been served. Attached to the motion was an affidavit of Lloyd A. Fry, Sr., asserting that he had "never been served at Summit, Illinois, or anywhere else, on February 15, 1968, or at any time whatsoever, with a summons or any other process. * * *" in this action. The court sustained the motion to quash after a hearing thereon, and in its findings in the case, filed January 10, 1969, trial having been held on December 16, 1968, stated as follows:

"20. That Lloyd A. Fry has never been personally served with a summons or any other process in the above-entitled cause, has never appeared and is not a party to the above-entitled cause.

"21. That the affidavit on file herein of Cook County Deputy Sheriff Griffith to the effect that he personally served Lloyd A. Fry individually with a summons in Summit, Illinois, on February 14, 1968, which affidavit was not filed in the court file until October, 1968, is untrue and incorrect and is without force and effect and has been quashed by order of this court.

"22. That this court is without jurisdiction over the person of * * * Lloyd A. Fry, individually, * * * and does not have jurisdiction to proceed against * * * Lloyd A. Fry, individually * *."

It should be noted that although proof of service was filed in October before trial

in December, and although no answer had been filed, no default had been sought and the trial proceeded in the absence of Fry. Considering the affidavit of Fry, together with the facts related above, we cannot say that there was an absence of substantial evidence to support the trial court's finding that no service had been made. Compare Eaton v. Cooke, 74 N.M. 301, 393 P.2d 329 (1964). Also, see 72 C.J.S. Process § 112; Collins v. Grey, 123 Misc. 227, 204 N.Y.S. 210 (1924); Riskin v. Towers, 24 Cal.2d 274, 148 P.2d 611 (1944).

Point III is identical with Point I, discussed above, except that service by publication on Fry Company was involved. The reasons set forth in our discussion of Point I concerning Fry apply to the corporation.

Points IV and V discuss claimed error in the action of the trial court in quashing the service on Fry Company on December 21, 1967, and again on December 9, 1968. The service in both instances was made under § 21–3–6(B) and (C), N.M.S.A.1953 (1969 Supp.), by having a copy of the summons and complaint delivered to the Secretary of State. On both occasions when such service was attempted a motion was made on behalf of Fry Company to quash service for the asserted reason that the Company was not doing business in this state. The court sustained both motions and quashed service on each occasion. After the trial at which Fry Company was not present because the motions to quash service had been sustained, the trial court found:

"16. That Lloyd A. Fry Roofing Company, shown as a defendant in the caption of this cause is a foreign corporation, and is not and has not been at any time material herein doing business in the State of New Mexico.

"17. That the attempts herein to serve the Lloyd A. Fry Roofing Company with a summons or other process in the above-entitled cause by service upon the secretary of state for the State of New Mexico were improper and invalid and such attempted service of process has been quashed by orders of this court.

"18. That Lloyd A. Fry Roofing Company has never been properly or duly served in the above-entitled cause, has never appeared and is not a party to this cause."

Appellant claims that the facts developed in the record indicate that Fry Company was "doing business" in New Mexico, and thus service under § 21–3–6, supra, was proper. These facts were developed in the affidavits filed by both parties in response to the first motion to quash service and in additional affidavits in response to the second. We do not need to decide whether the facts alleged were sufficient to justify service upon the first attempt; it is the last quashing that finally determined that Fry Company was not a party to the suit. At that time, by virtue of the primary and additional affidavits, the court had sufficient undisputed evidence of Fry Company's activities in New Mexico to require the legal conclusion that the Company was doing business.

The following facts from the record, available to the court at the time he sustained the second motion to quash, indicate that Fry Company was "doing business" in this state: Fry owned a controlling interest in Fry Company; Fry Company controlled Lydick, Inc., which controlled Lydick, Albuquerque. After 1965, Fry took an active part on behalf of his own and other interests in the management of these companies. The Fry Company had six distributors of its products in the State; it solicited orders for its products in the State; advertised, demonstrated, and transported its products in the State. Fry Company had extended credit here, and, as necessary, acted to collect accounts past due. Roofing bonds were issued directly by the Fry Company to owners of structures in the state which were roofed with their products. Commissions were paid directly to Lydick, Albuquerque, employees who sold Fry Company products in the Albuquerque area, and such commissions were evidenced

each year by the issuance of W–2 forms directly from Fry Company, which indicates clearly a sales force in the state whose orders did not have to be accepted by the home office of Fry Company. These facts are undisputed by the Fry Company.

In our opinion, the above facts clearly indicate that Fry Company was "doing business" in this state, as "doing business" is used in § 21–3–6, supra. The cases of Abner Mfg. Co. of Wapakoneta, Ohio v. McLaughlin, 41 N.M. 97, 64 P.2d 387 (1937); Vernon Company v. Reed, 78 N.M. 554, 434 P.2d 376 (1967), do not demand a different result. Both of those cases involved the prohibition against maintenance of any action in our state courts by foreign corporations who do business in the state, but who have not obtained a certificate from the Secretary of State showing that they have complied with the requirements that they file copies of their charter and other papers and designate an agent for service of process. The court, in both cases, held that where the only business in the state was solicitation of orders, which had to be accepted at an out-of-state office, then such was not sufficient "doing business" to require registration with the Secretary of State in order to maintain the action. In both, the only contact the foreign corporations had with New Mexico was the activity in connection with order solicitation. See, also, Cessna Finance Corp. v. Mesilla Valley Flying Service, Inc., 81 N.M. 10, 462 P.2d 144 (1969). In the instant case, however, we have substantial activities of Fry Company within New Mexico which involve not only sales, but commissions, advertising, promotion, bonding of products, distribution, collections, extension of credit, etc. From such a substantial pattern of dealings in the state, we must conclude that Fry Company was "doing business" here.

It follows from what has been said that the trial court erred in quashing the service against Fry Company under § 21–3–6 (B), supra, and that the findings quoted above lack support in the record.

▪ Plaintiff next complains of the action of the trial court in quashing personal service on Lydick in Texas. Although the complaint alleges a breach of an oral agreement of Lydick not to sell his stock in Lydick, Albuquerque, without first offering it for sale to the corporation, no allegations are contained therein that the agreement was either made or broken in New Mexico. That the agreement was made in New Mexico was developed in a deposition. We are constrained to hold that a sale of a majority stock ownership in a New Mexico corporation, in violation of an agreement made in New Mexico with a citizen of New Mexico, would satisfy the requirements of our Long Arm Statute (§ 21–3–16, N.M.S.A.1953). By its finding 19, after trial, at which Lydick was not a party, the trial court found that Lydick had never been properly served, had not appeared, and was not a party. We do not understand what the defect in the service was. The record shows a proof of personal service in Texas. Nothing more is required under § 21–3–16(B), supra. The court thus erred in quashing the service on Lydick. Hunter-Hayes Elevator Co. v. Petroleum Club Inn Co., 77 N.M. 92, 419 P.2d 465 (1966).

▪ Having disposed of the issues raised in connection with the service of process, we are brought to plaintiff's argument that the court erred in denying plaintiff leave to file an amended complaint. The motion was filed October 3, 1968. Complaint had been filed February 4, 1966, and the two defendants over whom jurisdiction had been obtained (Lydick, Albuquerque and Lydick, Inc.) had answered on March 10, 1966, and September 26, 1966, respectively. Under Rule 15 (§ 21–1–1(15) (a), N.M.S.A.1953), after a responsive pleading has been served, amendments may be made only with leave of court. Plaintiff, in his argument, confines himself to citation of decisions in which we have held it was error to deny amendment because of the principle requiring that permission be liberally granted. Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1965). It is also true that the question of whether amendment

should be granted rests in the sound discretion of the court, and should be reversed only in the event there is a clear abuse by the court. Vernon Company v. Reed, 78 N.M. 554, 434 P.2d 376 (1967). In the instant case, plaintiff asserts the oppressive nature of the refusal to permit the requested amendment, but does not undertake to explain in what way he was injured. However, defendants claim the attempted amendments involved a complete change of theory. Noting the time that had elapsed between the filing of the answers and the request for permission to amend, and not having had explained to us how plaintiff was prejudiced, we are not in a position to find an abuse of discretion by the trial court. Compare State for Use and Benefit of Pennsylvania Transformer Division, Mc-Graw-Edison Co. v. Electric City Supply Company, 74 N.M. 295, 393 P.2d 325 (1964). While some elements of similarity are present in the confused and uncertain nature of the allegations of the complaint, the situation is in no sense comparable to that in Hambaugh v. Peoples, 75 N.M. 144, 401 P. 2d 777 (1965), or Peoples v. Peoples, 72 N. M. 64, 380 P.2d 513 (1963), in both of which cases we held the court had abused its discretion in refusing to permit amendment.

█ As noted above, the trial date was December 16, 1968. The setting of this date was made by order filed December 9, 1968. In this same order, the motion to file an amended complaint was denied. The plaintiff now asserts error in the trial court in setting the case for trial, evidently sua sponte, and argues that since service on certain defendants was quashed at the same time the order was entered setting the date for trial only a week later, it was error not to permit time to perfect service. Aside from the fact that we cannot believe it can be considered error for a court to set a case that has resided on the docket for three years, less two months, for trial on its merits (see Rule 41 [§ 21–1–1(41), N.M.S. A.1953]), we do not find where plaintiff made any objection to the trial court concerning the setting. Such objection is necessary to preserve the question for re-

view. Supreme Court Rule 20 (§ 21–2–1 (20), N.M.S.A.1953); Barnett v. Cal M, Inc., 79 N.M. 553, 445 P.2d 974 (1968); Entertainment Corp. of America v. Halberg, 69 N.M. 104, 364 P.2d 358 (1961); Koran v. White, 69 N.M. 46, 363 P.2d 1038 (1961). The point is ruled against plaintiff.

Plaintiff's last five points are directed at claimed error in the court's action in sustaining defendant's motion to dismiss plaintiff's claim at the close of his case, and making and refusing certain findings and conclusions requested by him. Inasmuch as we have concluded that the court erred in quashing certain services of process, as hereinabove discussed, and, accordingly, the case must be retried, we do not perceive that any useful purpose would be served in our reviewing the proof submitted and ruled on at the close of plaintiff's case, or in making or denying requests for findings and conclusions. A retrial of *all issues well pleaded* as to all parties is required in order that substantial justice may be done. See Klinchok v. Western Surety Co. of America, 71 N.M. 5, 375 P.2d 214 (1962); Chronister v. State Farm Mutual Automobile Ins. Co., 67 N.M. 170, 353 P.2d 1059 (1960); Nichols v. Texico Conference Association of Seventh Day Adventists, 78 N.M. 310, 430 P.2d 881 (Ct.App.1967). Therefore, all that is necessary is that we determine which issues were well pleaded.

█ Although it is extremely difficult to determine from the complaint filed in the cause exactly what plaintiff had in mind, we are impressed, among other things, that he was trying to allege and prove misconduct and breach of trust by a majority stockholder or director to the injury of the corporation and its minority stockholders. That such a cause of action is proper, if well pleaded, cannot be doubted. See Prager v. Prager, 80 N.M. 773, 461 P. 2d 906 (1969); 13 Fletcher, Cyc. of Corps., § 5834 (1961 Rev.Vol.); Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 41 S.Ct. 209, 65 L.Ed. 425 (1921). Although not stated in separate

causes of action in the complaint, we see, also, an effort to state a claim of slander by defendant, Fry; a claimed breach of contract by Lydick, and an action for exoneration on a lease executed as surety for Lydick, Albuquerque. There may be others; however, they are not pleaded as required generally by the rules and, particularly, by Rules 8 and 10 (§ 21–1–1(8) and (10), N.M.S.A.1953). We have not considered the amended complaint which the court ruled could not be filed, and we express no opinion as to whether it is sufficient under our rules. Neither have we considered if a prima facie case for recovery on any ground was proved. Plaintiff argues that he established a right to recover for five reasons, viz., (1) defendant Fry had exercised de facto control over the corporation and interfered in its affairs; (2) plaintiff had been "double-crossed" by defendant Lydick with reference to transfer of stock; (3) defendant Fry had taken over operation of the corporation which had gone into liquidation, and plaintiff had lost $26,000; (4) plaintiff had guaranteed a lease for Lydick, Albuquerque and wanted exoneration; and (5) defendant Fry employed his dominant position in the corporation to sell it supplies at exorbitant prices. We express no opinion as to whether he succeeded in proving a prima facie case. However, see T. M. Crutcher Laboratory v. Crutcher, 288 Ky. 709, 157 S.W.2d 314 (1946).

▮ The trial court rendered judgment for $4,211.47 against the plaintiff on the counterclaim of Lydick, Albuquerque. Plaintiff does not contest this but, by cross appeal, Lydick, Albuquerque complains of the trial court's failure to find that plaintiff had caused himself to be paid a total of $2,518 more in salary for the years 1962–1965 than the corporate minutes showed to have been authorized by the board of directors. The corporate by-laws provide that salaries for corporate officers should be fixed by the directors. The minutes show that on October 30, 1961, the salary of plaintiff was fixed at $1025 per month. No change is shown in subsequent minutes. However, plaintiff testified that changes had been made by the directors, although not shown, and that this was done notwithstanding knowledge of an agreement between Lydick, Inc. and Fry Company, dated July 27, 1962, that salaries of officers would not be raised without Fry's consent. The testimony of plaintiff to the effect that the raises were approved by the directors, when considered in most favorable light to uphold the trial court, provides substantial support for the trial court's refusal to find the increases were "improper or unauthorized," notwithstanding the absence of a showing of approval in the minutes. Nothing more was required. See Cutter Flying Service, Inc. v. Straughan Chevrolet, Inc., 80 N.M. 646, 459 P.2d 350 (1969); Ortiz v. Jacquez, 77 N.M. 155, 420 P.2d 305 (1966); Varney v. Taylor, 77 N. M. 28, 419 P.2d 234 (1966); Lindsay v. Hartog, 76 N.M. 122, 412 P.2d 552 (1966). It follows that the attack on the judgment on the counterclaim is found to be without merit.

The judgment in favor of defendants is reversed, and the cause remanded to the district court with instructions to grant a new trial after plaintiff has had an opportunity to perfect service of process, and amend its complaint (in view of our reversal) as it may be advised and in accord with Rule 15 (§ 21–1–1(15), N.M.S.A.1953) and the defendants have responded thereto. Execution or collection of the judgment on the counterclaim should be stayed pending disposition of the claims asserted by plaintiff.

It is so ordered.

COMPTON, C. J., and TACKETT, WATSON and SISK, JJ., concur in the granting of the rehearing and in the opinion as above set forth.