787 P.2d 443

Ralph F. PETTY, Jr.,
Plaintiff–Appellant,

v.

The BANK OF NEW MEXICO HOLDING COMPANY, George L. Clark, Charles Spann, Mike Anaya, Albert Arrigoni, Culbertson & Culbertson Partnership, Marie Ellen Culbertson, Myles C. Culbertson, George H. Dapples, Sam Dazzo, Sr., George M. Fernandez, James H. Franke, Jerry A. Henson, Holiday Management Company, Jerry W. Keeran, Jeffrey P. Lane, Richard D. Lueker, Joan Lueker, Joseph C. Murray, Ronald D. McConnell, Sosimo Padilla, Ruth Padilla, Don G. Price, Ron M. Price, Alonzo D. Romero, Antonio A. Sanchez, Orhan M. Sansoy, M.D., Orhan M. Sansoy, P.A. Pension Plan, Ronald J. Shettlesworth, Mary Ellen Shettlesworth, Southwest Cardiology Associates, P.A., Spann, Latimer and Hollowwa, Ronald B. Williams, Rebecca G. Williams, Ben A. Lanford, Sr., and State Beer Distributors, Inc., Defendants–Appellees.

No. 18059.

Supreme Court of New Mexico.

Feb. 19, 1990.

Villella, Skarsgard & Noya, Patrick Villella, Albuquerque, for plaintiff-appellant.

Freedman, Boyd & Daniels, John W. Boyd, Albuquerque, for Clark.

White, Koch, Kelly & McCarthy, Bruce R. Kohl, Santa Fe, for Bank of NM Holding Co.

Charles C. Spann, Albuquerque, pro se.

Spann, Latimer & Hollowwa, James A. Artley, Albuquerque, for Spann, Latimer & Hollowwa.

Robert B. Martinez, Albuquerque, for Shettlesworths and Williamses.

## OPINION

MONTGOMERY, Justice.

In this stockholder's derivative suit a minority shareholder (Petty) seeks relief from officers and directors of the corporation (the Holding Company). The complaint requests a determination that funds advanced to the defendants as litigation expenses in another suit have been wrongfully diverted from the corporation and judgment for any such improper expenditures. The district court dismissed the complaint for failure to state a claim upon which relief could be granted. Petty appeals, claiming that his complaint was sufficient to state a cause of action on behalf of the corporation for the allegedly wrongful indemnification of the officers and directors. He maintains that the New Mexico statute authorizing indemnification of directors does not bar this action.

We agree that, under New Mexico's liberal pleading rules for testing the legal sufficiency of a complaint, Petty's complaint does state a claim for relief. We hold that, under the facts pleaded in the complaint, the corporate indemnification statute does not immunize the advances to the directors and that, while there is an aspect of prematurity to Petty's complaint that might justify withholding relief at this stage, the court erred in concluding that the complaint was legally insufficient. We accordingly reverse and remand for further proceedings.

### I.

Petty purchased his fifty shares (less than 1% of the outstanding common stock)

in the Holding Company on September 23, 1987. One week later he addressed a letter to the Holding Company demanding that it refrain from paying any of the litigation expenses incurred by the defendants in another, pending lawsuit among persons who were Holding Company shareholders and signatories to a buy-sell and voting trust agreement relating to the corporation's stock. The next day, October 1, the corporation authorized reimbursement of its officers and directors for their legal fees, costs and expenses incurred in the defense of the other litigation.

The other litigation (the *Lanford* litigation), which is presently pending, is a suit by Ben A. Lanford and others against George L. Clark, president and chief executive officer of the Holding Company, against other shareholders of the Holding Company, and against the Holding Company itself, for a determination of the price at which shares of stock in the corporation will be bought and sold pursuant to a "Shareholders Buy–Sell and Voting Agreement." The agreement is a more-or-less standard agreement fixing the price at which shares of stock in the corporation shall be bought and sold among signatories to the agreement on the occurrence of certain events, and conferring on certain "Shareholder Representatives" power to vote the signatories' stock in electing members of the board of directors. The agreement is subscribed by shareholders owning over 80 percent of the stock of the Holding Company. Petty is not a party to the agreement.

On November 11, 1987—approximately one and one-half months after acquiring his stock—Petty filed in district court this suit against the Holding Company and its officers and directors. His complaint, amended by leave of court, asserts that funds belonging to the Holding Company are being expended for legal services to defend the actions and advance the private interests of the signatories to the buy-sell agreement. It further alleges that this use of corporate funds is wrongful and a breach by the officers and directors of their fiduciary and other obligations to the Holding Company and its shareholders.

The amended complaint prays for the following items of relief, among others: "judgment to determine and prohibit the use of any Holding Company funds to defend the [*Lanford*] litigation by and among" signatories to the buy-sell agreement; judgment against the officers and directors "who authorized the improper use of Holding Company monies for the amount advanced or wrongfully diverted"; and "a determination that the fees and costs of defense of this action" by the officers and directors may not be reimbursed by the Holding Company.

The officers and directors, defendants in the present action, moved to dismiss the complaint for failure to state a claim upon which relief could be granted, asserting the following two specific grounds: (1) Indemnification of officers and directors is specifically permitted by statute (NMSA 1978, § 53–11–4.1 (1989 Supp.)), and (2) the complaint fails to allege why the directors and officers' action constitutes a breach of their fiduciary obligation. The court granted the motion, and Petty appeals.

II.

As to the second of the two grounds asserted in defendants' motion to dismiss, we think it clear that the complaint alleged sufficient facts to state a claim against the officers and directors for breach of their fiduciary duty. The foregoing recitation of facts is taken, of course, from the complaint, the allegations of which we are bound to accept as true on a motion to dismiss for failure to state a claim. *Gomez v. Board of Educ.*, 85 N.M. 708, 710, 516 P.2d 679, 681 (1973). The question before us, at the stage of testing the legal sufficiency of a complaint, is whether the plaintiff might prevail under any state of facts provable under his claim. *Id.*; *Hall v. Budagher*, 76 N.M. 591, 592, 417 P.2d 71, 72 (1966). Under our rules of "notice pleading," it is sufficient that defendants be given only a fair idea of the nature of the claim asserted against them sufficient to apprise them of the general basis of the claim; specific evidentiary detail is not required at this stage of the

pleadings. *See Hambaugh v. Peoples*, 75 N.M. 144, 149, 401 P.2d 777, 780 (1965) (citing 2 *Moore's Federal Practice* § 813, 1695 [now 2A Moore's Federal Practice ¶ 8.13 (1989)]: "courts have recognized that the function of pleadings under the Federal Rules is to give *fair notice* of the claim asserted so as to enable the adverse party to answer and prepare for trial * * *") (emphasis in original opinion).

■ Here, the defendants were adequately apprised of the nature of Petty's claim (or more accurately, of the corporation's claim, asserted derivatively by Petty) against them, by virtue of the allegations that they had breached their fiduciary duty, or otherwise acted wrongfully, in authorizing the directors' indemnification by the Holding Company of their litigation expenses in the *Lanford* litigation. The most significant, if not the entire, basis for this assertion was that they had acted for their own private benefit, as signatories to the buy-sell agreement, in causing the corporation to pay their litigation expenses. These are adequate allegations under the general law surrounding corporate directors' breach of duty to the corporation and their liability to reimburse the corporation for any ensuing damage.

■ Although appellate courts in New Mexico have not often had occasion to discuss stockholders' derivative suits and the liability of officers, directors and controlling majority shareholders for breach of fiduciary duty to the corporation and its minority shareholders, it is thoroughly settled that an action such as this will lie, on behalf of the corporation, to restrain and seek reimbursement for disbursements by the corporation occasioned through the defendants' breach of their fiduciary or other duties owing to the corporation and the minority shareholders. "That such cause of action is proper, if well pleaded, cannot be doubted." *Pope v. Lydick Roofing Co.*, 81 N.M. 661, 666, 472 P.2d 375, 380 (1970). *Pope* is one case in which such an action has been recognized; there have been countless others around the country.

The courts will protect minority stockholders against fraud or a breach of trust by officers or directors. Stockholders may obtain relief in equity against the officers of the corporation who wrongfully deal with its property to the injury of the stockholders. There is authority that minority stockholders can obtain relief against acts of mismanagement, abuse of discretion, failure to perform statutory duties, acts in violation of statute or against public policy, and negligence on the part of corporate directors or officers, through a derivative as distinguished from an individual action.

19 Am.Jur.2d *Corporations* § 2262, at 161 (1986).

We conclude that on its face the complaint was sufficient to withstand a motion to dismiss for failure to state claim, unless some provision of law immunized the directors' conduct in authorizing indemnification in this instance.

### III.

■ What then of the directors' position that their action was permitted by a specific provision in the New Mexico Business Corporation Act?

NMSA 1978, Section 53–11–4.1(B) (1989 Supp.) provides:

A corporation shall have power to indemnify any person made a party to any proceeding by reason of the fact that the person is or was a director if:

(1) the person acted in good faith;

(2) the person reasonably believed:

(a) in the case of conduct in the person's official capacity with the corporation, that the person's conduct was in its best interests; and

(b) in all other cases, that the person's conduct was at least not opposed to its best interests; and

(3) in the case of any criminal proceeding, the person had no reasonable cause to believe the person's conduct was unlawful. Indemnification may be made against judgments, penalties, fines, settlements and reasonable expenses, actually incurred by the person in connection with the proceeding; except that if the proceeding was by or in

the right of the corporation, indemnification may be made only against such reasonable expenses and shall not be made in respect of any proceeding in which the person shall have been adjudged to be liable to the corporation

* * * *

The directors' principal position on this appeal is that, when a corporation acts pursuant to this section to indemnify its officers or directors (or other agents, *see* Section 53–11–4.1(I)), such action on its part is conclusive and confers the absolute right on the directors, etc., to receive the indemnification. They further contend that the "only circumstance" in which indemnification can be challenged as improper is that outlined in Section 53–11–4.1(C), which reads:

A director shall not be indemnified under Subsection B of this section in respect of any proceeding charging improper personal benefit to the director, whether or not involving action in the director's official capacity, in which the director shall have been adjudged to be liable on the basis that personal benefit was improperly received by the director.

There are two defects in the directors' argument. The first is that the indemnification statute is, under the allegations of the complaint in this case, inapplicable to the Holding Company's action with respect to the defendants in the *Lanford* litigation. The second is that, while Section 53–11–4.1(B) confers on a corporation the *power* to indemnify, it does not thereby insulate an indemnification from attack in a derivative suit on grounds of breach of fiduciary duty, mismanagement, etc. We shall explain the first of these defects now; we shall discuss the second in Part IV.

Section 53–11–4.1(B) empowers a corporation to indemnify a person made a party to a proceeding "by reason of the fact that the person is or was a director." Under the allegations in Petty's complaint, the statute does not apply to the Holding Company's action indemnifying the directors as defendants in the *Lanford* litigation because they were not made parties to that proceeding *by reason of the fact that* they

are or were directors of the corporation. Rather, they were made parties to that litigation by reason of the fact that they are shareholders in the Holding Company and signatories to the buy-sell and voting trust agreement.

Section 53–11–4.1, adopted in 1987 (N.M. Laws 1987, ch. 238, § 9), was taken from the 1980 amendments to the American Law Institute and American Bar Association's Model Business Corporation Act, Sections 8.50–8.58. At the present time, all American jurisdictions have statutes providing for the indemnification of litigation expenses incurred by directors, officers and other corporate personnel in the defense of litigation brought against them as such. H. Henn & J. Alexander, *Laws of Corporations and Other Business Enterprises* § 380, at 1123 (3d ed. 1983) [hereinafter *Henn & Alexander* ]. Typical of these statutes are the formulations in the various revisions of the Model Business Corporation Act. *Id.* at 1131.

In most of the jurisdictions recovery of expenses by directors or others covered is dependent upon their being involved in the action by reason of "being or having been" a director, etc.

Fletcher, *Cyclopedia of Corporations* § 6045.3, at 645 (perm. ed. 1984). *See Sorensen v. Overland Corp.,* 242 F.2d 70 (3d Cir.1957) (contract made by plaintiff in individual capacity and not as director); *Mooney v. Willys–Overland Motors, Inc.,* 204 F.2d 888 (3d Cir.1953) (director sued for wasting corporation assets allowed full expenses of suit although part attributable to defense as stockholder); *Hydro–Dynamics, Inc. v. Pope,* 146 Ariz. 586, 708 P.2d 70 (1985) (director and wife who brought derivative action not entitled to indemnification because they sued in their capacity as shareholders); *People v. Uran Mining Corp.,* 26 Misc.2d 957, 206 N.Y.S.2d 455 (Sup.Ct.1960) (indispensable condition of statute is that defendant must have been made a party to the action by reason of his being or having been a director, etc., of the corporation).

Petty does not point specifically to the "by reason of the fact that" requirement in

the statute but argues repeatedly in his brief that the *Lanford* litigation is an action among the shareholders of the Holding Company and signatories to the buy-sell and voting trust agreement. By clear implication, then, Petty maintains that the directors were not made parties to that litigation by reason of the fact that they are or were directors of the corporation. The directors, for their part, likewise do not discuss the meaning or applicability of the statutory requirement, although they do argue that "[a] corporation has the right under law to indemnify an officer or director *whether or not* that person was acting in an 'official corporate capacity' in the conduct being defended." (Emphasis in original.) The directors go on to argue that, if an officer or director is sued in his "official capacity," the corporation may indemnify him as long as he acted in good faith and reasonably believed that his conduct was in the "best interests of the corporation," but that, if he was not acting in his official capacity, the corporation can indemnify him so long as he acted in good faith and reasonably believed that his conduct was "at least not opposed to [the corporation's] best interest." For this distinction the directors cite Subsections (a) and (b) of Section 53–11–4.1(B)(2). *See also* Section 53–11–4.1(A)(4) (definition of "official capacity"). Thus, completing their argument on this point, the directors contend that the standard of conduct for a director or officer for which he may be indemnified is *broader* for acts performed outside his official corporate capacity than it is for acts performed within his official capacity.

In terms of the *conduct* for which a director may be indemnified, the directors' argument—that the standard is broader for conduct outside one's official capacity than it is for acts within that capacity—may well be correct. However, the correctness of their argument on this point in no way supports an implication that the statute authorizes indemnification of persons who are not joined as parties to a proceeding by reason of the fact that they are or were directors. Under the statute, the reason for a person's being named a party appears critical; once he or she is joined as a party

to the proceeding, the conduct placed in issue might very well give rise to a more relaxed standard of indemnification if that conduct was "unofficial" than if it was performed in the director's "official capacity." For an example of this distinction, *see Henn & Alexander, supra* at 1136 n. 71 (action taken or omitted by director with respect to an employee benefit plan in the performance of director's duties deemed to be for a purpose not opposed to the best interests of the corporation). Even so, it clearly would make no sense for the statute to authorize indemnification of an individual who was not sued because of his status as a director, etc., of a corporation— who, in effect, was a stranger to the corporation for purposes of the proceeding on account of which he or she was granted indemnification. The purpose of the legislation is to encourage qualified individuals to accept the responsibilities of corporate management without fear that expenses incurred by them in performing their duties as directors will not be borne by the corporation they serve. *Fletcher, supra,* § 6045.2 at 474. To expand the list of persons entitled to claim the benefit of indemnification to include signatories to a buy-sell agreement, who are litigating questions under that agreement for their own private benefit, would go far beyond this purpose of the statute.

We hold, therefore, that, under the facts as alleged in Petty's complaint, the indemnification statute does not apply to the defendants named in the *Lanford* litigation.

## IV.

We turn next to the directors' principal contention on this appeal, namely, that "there is only a very narrow circumstance in which a shareholder might be able to litigate the propriety of a corporate decision to indemnify"—viz., that the conditions in Section 53–11–4.1(C) for *not* indemnifying a director are satisfied.

The directors assert, tracking the language of Section 53–11–4.1(C), that the "only circumstance" in which Petty could

state a claim for "wrongful indemnification" would be in the event the following four conditions existed: First, that the *Lanford* suit charged that a director received an "improper personal benefit"; second, that that suit was concluded; third, that it was concluded unfavorably to the indemnified director; and fourth, that the unfavorable outcome included an adjudication that the indemnified director was liable on the basis that he improperly received personal benefit.

 It is certainly true that, if these four conditions did exist, indemnification of the directors would be improper and a stockholder such as Petty could maintain a derivative action against the Holding Company to recover funds advanced or otherwise paid by way of indemnification and/or to restrain any threatened indemnification. However, reliance on Section 53-11-4.1(C) is not the sole basis for an action to challenge a corporate indemnification. If the corporation exercises its power under Section 53-11-4.1(B) to indemnify under other circumstances, that exercise may be challenged in a stockholder's derivative suit where it is alleged that the action was taken by the authorizing directors in breach of their fiduciary or other duty to the corporation. To see that this is so requires recognition of Section 53-11-4.-1(B) as an enabling statute—as conferring on the corporation a *power* which it might otherwise lack, but not as declaring that any indemnification pursuant to the statute is immune from challenge in a derivative lawsuit. Section 53-11-4.1(B) does not, in other words, confer on the indemnified director an unquestionable *right* to indemnification.

Before proceeding further, we pause to note that our discussion as to why the indemnification statute does not immunize the directors from the challenge posed in Petty's complaint should shed light on this issue in the event it arises on remand. In this connection, the directors represent in their answer brief that, although Petty's complaint alleges that "officers and directors" of the Holding Company were granted indemnification for their litigation expenses in the *Lanford* litigation, in fact only the president of the corporation, Mr. Clark, was so indemnified. The record on appeal—not the complaint—contains suggestions that the *Lanford* litigation (the complaint in which is *not* part of the record in this case) involves assertions that Mr. Clark defrauded Mr. Lanford into signing the buy-sell agreement and that the agreement is being misinterpreted or improperly administered in some fashion. Thus, there may very well be allegations in the *Lanford* litigation implicating Mr. Clark and perhaps other directors of the Holding Company *as directors* so that one or more of them may turn out, as the facts are developed in the present case, to have been made parties to the *Lanford* proceeding "by reason of the fact that" they are or were directors of the Holding Company. In that case, Section 53-11-4.1 will be applicable, and the question will arise, does the statute bar Petty's complaint for "wrongful indemnification"? To answer this question, we must review briefly the history, purpose and structure of the statute.

As already noted, all American jurisdictions now have statutes empowering corporations to indemnify their directors and other agents under various circumstances. These statutes originated with an enactment in New York in 1941 in response to a case holding that certain directors who had been defendants in a derivative suit charging misconduct were not entitled to reimbursement of their litigation expenses, even though they had been successful in the action, unless they could show that in defending the action they brought some benefit to the corporation. *New York Dock Co. v. McCollom,* 173 Misc. 106, 16 N.Y.S.2d 844 (1939). Under the common-law rules developed up to that time and thereafter until enactment of the various statutes, there was a split of authority as to whether there was a right to indemnification, the cases reaching different results depending on whether or not the director was successful in his defense, whether a benefit was conferred on the corporation, and other factors. *See generally, Henn & Alexander, supra,* § 379; Fletcher, *supra,*

§ 6045.1. Several of these early cases held that the corporation lacked power to indemnify successful directors absent a benefit to the corporation. *See, e.g., New York Dock Co.; Griesse v. Lang,* 37 Ohio App. 553, 175 N.E. 222 (1931), *but see Figge v. Bergenthal,* 130 Wis. 594, 109 N.W. 581 (1906).

In New Mexico, the question whether the corporation has power to indemnify its directors has not until now been considered by this Court or the court of appeals. Under the corporation statutes in effect before adoption of our Business Corporation Act, there was no reference to this subject. *See* NMSA 1953, §§ 51–1–1 to –13–12.1. In 1967, however, our legislature enacted the Business Corporation Act, N.M. Laws 1967, ch. 81, taken from the 1960 version of the ALI–ABA Model Act, section 4(*o*) of which related to indemnification. Then, in 1980 the Model Act was revised to deal with indemnification at greater length, ALI–ABA, Model Bus.Corp. Act, § 5 (1980), and these provisions appear in Section 53–11–4.-1, as originally enacted (N.M.Laws 1983, ch. 304, § 23) and as amended in 1987 (N.M. Laws 1987, ch. 238, § 9). *See generally* 2 *Model Bus.Corp. Act Anno.* §§ 8.50–8.58 (3d ed. 1984). For a brief history of a corporation's power to indemnify and the evolution of this concept within the Model Act *see id.* at 1088–91.

Section 53–11–4.1(B) by its terms purports to give a corporation the *power* to indemnify a person under the conditions specified. We think it noteworthy that this section of our Business Corporation Act follows Section 53–11–4, which enumerates the various other powers possessed by corporations. Section 53–11–5, which immediately follows Section 53–11–4.1, also deals with a corporate power, the power to acquire a corporation's own shares. Then, consistently with this statutory scheme, Section 53–11–6 deals with the defense of *ultra vires*—the defense that a corporation acted beyond the scope of its power or has exercised its power irregularly. *Black's Law Dictionary* 1365 (5th ed. 1979).

From all of this—from the wording of Section 53–11–4.1(B) itself, from its histori-

cal background and from the placement of the section among other provisions of the Business Corporation Act dealing with powers of corporations—we conclude that the statute (that is, Section 53–11–4.1(*B*)) operates to *empower* corporations to indemnify their directors and other agents, not to confer on those persons the *right* to indemnification (except in the situation that will shortly be described).

This being so, we believe that an act of indemnification, like any other exercise by a corporation of one or more of its powers, is subject to challenge in a stockholder's derivative suit (or in any other type of proceeding in which an act of the board of directors or other corporate personnel may be called into question) in the same way that other corporate actions may be reviewed. It could not reasonably be argued, for example, that simply because a corporation has power to dispose of its assets or lend money or otherwise conduct its business, as contemplated by Subsections 53–11–4(D), (F) and (J), the actions of its board of directors in doing these things are immune from scrutiny in a stockholder's derivative suit or other proceeding. In such a case, the question is whether the directors properly exercised the corporation's admitted power to take the action or whether in doing so they were guilty of breach of fiduciary duty, mismanagement or some other violation of their duty to the corporation.

In the same way, an act of indemnification by a corporation pursuant to the general grant of power in Section 53–11–4.1(B) may be made the basis of a suit, at the instance of a minority shareholder or otherwise. In such a case—and in this case on remand and if the statute is otherwise found to be applicable—the question will be whether the directors have breached their fiduciary duty to the corporation or otherwise have failed to adhere to the various standards of conduct required of corporate directors in the management of their corporations.

Thus, we reject the directors' contention on this appeal that the "only circumstance" under which they could be liable for

"wrongful indemnification" is that envisioned by Section 53–11–4.1(C). If the circumstances contemplated by that subsection were found to exist, then the directors would be liable to restore to the corporation any funds improperly advanced to them by way of indemnification, whether or not there was any breach of fiduciary duty or other culpable conduct leading to the indemnification in the first place. In that situation, the indemnification would be *ultra vires,* and the directors would be absolutely liable to return any funds or other assets that had been improperly advanced or reimbursed to them.

But another "circumstance" in which the directors might be liable for "wrongful indemnification" is that at least arguably evoked by Petty's complaint—an indemnification under the broad authority conferred by Section 53–11–4.1(B), where the directors' exercise of their power under that subsection is shown, to the satisfaction of the trial court, to have been improper under the general fiduciary and other standards guiding corporate directors' exercise of their discretionary powers. As we have held, Petty's complaint states a cause of action, and if he proves that the directors breached their fiduciary duty in authorizing indemnity to Mr. Clark and any other directors in connection with the *Lanford* litigation, then Section 53–11–4.1(B) will not prevent his recovery on behalf of the corporation.

An exception to the statement just made is found, of course, in Section 53–11–4.1(D)(1). Under this subsection, a director who has been wholly successful in the defense of a proceeding "shall be indemnified" against the reasonable expenses incurred by him or her in connection with the proceeding. This subsection, therefore, gives such a director the absolute *right* to indemnification under the circumstances contemplated by it; and it does, moreover, make the "opinion of the board of directors" final on the question, assuming that their opinion is "reasonable."

### V.

Much of the directors' brief on this appeal is devoted to the proposition that Petty's complaint is premature—that the outcome of his suit for "wrongful indemnification" will necessarily depend on how the *Lanford* litigation is concluded. For, as we have just seen, a disposition of that litigation in which the directors are "wholly successful" will *entitle* them to indemnification against their reasonable expenses incurred in connection with the proceeding (assuming that the board of directors reasonably arrives at the opinion that they have been, in fact, wholly successful). Alternatively, in the event that the directors shall be "adjudged to be liable" in the *Lanford* case on the basis that personal benefit was improperly received by them (assuming in that case that they are charged with having received improper personal benefit), then, according to Section 53–11–4.1(C), they *shall not be indemnified,* and the corporation will have the right (which can be asserted derivatively in a stockholder's suit) to recover any amounts advanced to the directors, regardless of any culpable conduct by the directors in authorizing the indemnification.

A third scenario under which disposition of the *Lanford* litigation will be highly pertinent is that to which our construction of Section 53–11–4.1(B) gives rise: The outcome of that litigation will probably have a significant effect on the trial court's determination in this case as to whether or not the directors acted improperly in authorizing advance indemnification of the *Lanford* litigation expenses. As the directors say, "the outcome of the *Lanford* litigation, and the matters determined therein, * * * will form the nucleus of facts from which the Holding Company [and, we add, the trial court] can make the determination of whether indemnification of Clark, et al., was permissible or prohibited" or perhaps even required.

There are numerous factors, in short, on the basis of which the district court could have concluded that this action is not ripe for an adjudication. If it drew such a conclusion, the court might well decide to dismiss the action as premature. *See Schy v. Susquehanna Corp.,* 419 F.2d 1112,

1115 (7th Cir.), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970).

 We note in this connection that Petty's complaint essentially is framed as a request for declaratory relief. He asks that the court *determine* that the use of any Holding Company funds to defend the *Lanford* litigation is improper, that such litigation expenses may not be reimbursed by the Holding Company and that any judgment against the directors in that case may not be reimbursed to any defendant. Under New Mexico law, it is not mandatory that a trial court entertain an action for a declaratory judgment; the court may in its discretion dismiss the action, presumably in a case where good reason for doing so exists. *Allstate Ins. Co. v. Firemen's Ins. Co.,* 76 N.M. 430, 415 P.2d 553 (1966).

Although tempted to do so, we do not affirm the trial court's dismissal in this case on this ground. For one thing, it does not appear that the court exercised its discretion to dismiss for lack of ripeness, and we should not pass upon the dismissal on any such ground in the absence of a showing that the trial court considered it and in the absence of argument on the point by the parties. For another, the directors' claim that this action is premature is predicated on the applicability of the indemnification statute. If that statute does not apply, as discussed in Part III of this opinion, then the case may well be ripe and not premature.

This action has many of the earmarks of a minority shareholder's "strike suit"—a suit by a holder of a miniscule interest in the corporation to harass and coerce the directors into a settlement far out of proportion to the minority shareholder's financial interest in the object of the suit. *See generally Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548–49, 69 S.Ct. 1221, 1226–27, 93 L.Ed. 1528 (1949); *Gordon v. Elliman,* 306 N.Y. 456, 479–480, 119 N.E.2d 331, 345–46 (1954) (Fuld J., dissenting). This consideration, along with the others mentioned above and some that may occur to the district court, may, upon a fuller development of the facts by discovery or otherwise, lead the court ultimately to dismiss the action or to hold it in abeyance until it more clearly appears that the corporation, through its stockholder representative in this derivative lawsuit, is entitled to relief.

For the present, however, we conclude that Mr. Petty has stated a claim upon which relief could be granted. We therefore reverse the district court's order of dismissal and remand the case for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.