[No. B135292. Second Dist., Div. One. Sept. 29, 2000.]

WILSHIRE-DOHENY ASSOCIATES, LTD., et al., Cross-complainants and Respondents, v.
STANLEY SHAPIRO et al., Cross-defendants and Appellants.

**COUNSEL**

Kalisch, Cotugno & Rust, Richard N. Rust and Lee W. Cotugno for Cross-defendants and Appellants.

Dennis R. Bunker and Jeffrey L. Melczer for Cross-complainants and Respondents.

## Opinion

### SPENCER, P. J.—

#### Introduction

Appellants Stanley Shapiro and Jeffrey R. Matsen appeal from a judgment denying appellants attorney's fees on the cross-complaint by respondents Wilshire-Doheny Associates, Ltd., and Daishin U.S.A. Co., Ltd. We reverse that portion of the judgment.[1]

#### Factual and Procedural Background

Daishin Kyouritsu, Ltd., is a Japanese company (hereinafter Daishin Japan). In 1989, it incorporated a wholly owned subsidiary in Hawaii, respondent Daishin U.S.A. Co., Ltd. (Daishin USA). Kenshi Shishido (Shishido) was president of both Daishin Japan and Daishin USA.

Daishin USA and Shishido created respondent Wilshire-Doheny Associates, Ltd. (WDA) in 1989 to acquire a commercial office building (the Building) at Wilshire Boulevard and Doheny Drive in Beverly Hills. Daishin USA also created Wilshire-Doheny Investment Corporation (WDIC) to operate and manage the building. WDIC became a 15 percent owner of WDA, while Daishin USA owned the other 85 percent.

Kazuya Shinoda (Shinoda) was made chief executive and financial officer of WDIC. Shinoda also served as an intermediary between Shishido and those with whom he did business in the United States, since Shishido did not speak English and Shinoda spoke both English and Japanese.

WDA purchased the Building in December 1989. Shishido did not have the funds to purchase the Building, so he approached Taro Tanabe (Tanabe), chairman and chief executive officer of Daishin Japan, for a loan. Tanabe arranged for a loan to Daishin Japan, which then lent the money to Daishin USA. Although the purchase price of the Building was $33.7 million, Daishin USA borrowed $37.2 million from Daishin Japan.

---

[1]Other portions of the judgment are being challenged in a separate appeal by Wilshire-Doheny Associates, Ltd., and Daishin U.S.A. Co., Ltd. (*Wilshire-Doheny Associates, Ltd. v. Shapiro* (B136477).)

Appellant Jeffrey R. Matsen (Matsen) is an attorney. Shishido hired him in late 1989 to provide legal services to Daishin USA with respect to the purchase of the Building and another piece of property, Carmel Highland, a resort in San Diego County. On December 7, 1989, Shishido made Matsen vice-president and assistant secretary of Daishin USA. Matsen also assisted in the formation of WDIC and served temporarily as a corporate officer.

Appellant Stanley Shapiro (Shapiro) is a real estate broker. In late 1989, Shishido requested that Shapiro serve as real estate broker for Daishin USA and WDA in the purchase of the Building and Carmel Highland. He agreed to do so. He worked with Matsen to complete the purchase of the two properties.

When WDIC took over management of the Building, Shapiro agreed to serve as the corporation's president. He served as president or acting president until April 1994.

Problems began to arise in 1991. Tanabe learned that the purchase price of the Building was $33.7 million, not the $37.2 million he had arranged to be loaned to Daishin USA. He also learned that Daishin USA did not own the Building in its entirety, as he had believed, but owned only 85 percent of it. He asked Shishido, Shinoda, Matsen and Shapiro to explain these discrepancies, but none of them would answer him.

Then Shapiro demanded $3 million from Daishin Japan. This was based on advances made for operating expenses for the Building and Carmel Highland. Tanabe became concerned about the manner in which WDIC was managing the Building as well as its involvement with Carmel Highland.

A number of meetings were held toward the middle and end of 1991 to resolve the problems and, specifically, to ensure that Daishin Japan would be repaid the money it had loaned Daishin USA. Tanabe, Shishido, Shinoda, Matsen and Shapiro were present, as well as attorneys and accountants. There was no final resolution of the problems at that time, however.

Dissatisfied with Shishido's performance, Tanabe relieved Shishido of many of his responsibilities in 1992. Shishido ultimately resigned in 1993. His reason for resigning was that "everyone" had defrauded him.

After Shishido was relieved of his responsibilities, Tanabe sought financial information from Shinoda, Shapiro and Bruce Karasik (Karasik), the Building's comptroller.[2] None of them provided the requested information.

By the summer of 1993, the value of real estate in California was declining and the Building was losing money. Tanabe came to Beverly Hills from Japan and spoke with Shinoda and Shapiro, who were in control of the Building. They were not helpful. Tanabe decided to make it his highest priority to protect Daishin Japan's investment. He wanted Daishin USA to take full ownership and control of the Building.

After months of negotiations, representatives of Daishin Japan and Daishin USA met with representatives of WDIC for three days to negotiate a mutual release. The release was executed on January 13, 1994, by Tanabe, on behalf of Daishin USA, and Shinoda and Shapiro, on behalf of WDIC. It provided that "[i]n consideration for the transfer of the interest in Wilshire-Doheny Associates ('WDA') from Wilshire Doheny Investments Corporation ('WDIC') to DAISHIN thereby resulting in distribution of the Building from WDA to DAISHIN, DAISHIN hereby releases and discharges WDIC and its affiliates, and Kazuya Shinoda, Stanley Shapiro, Jeffrey R. Matsen . . . [and] Bruce Karasik . . . (Collectively WDIC Releasees), from any and all rights, claims, counter claims, demands, obligations, duties, liabilities, guarantees and/or causes of action of any nature whatsoever or which DAISHIN may have or claim to have against the WDIC Releasees." The WDIC Releasees similarly released Daishin Japan, Daishin USA and Tanabe. The mutual release excluded a 1993 loan to WDIC and addressed a number of specific obligations. It also waived the benefit of Civil Code section 1542, which provides that a general release does not extend to unknown claims.

On August 2, 1994, Karasik filed a complaint against WDA, Daishin Japan and Daishin USA for declaratory relief, an accounting, nonpayment of wages, breach of contract, fraud, negligent misrepresentation, negligence, negligent and intentional infliction of emotional distress and conspiracy. His action was based upon WDA's termination of his employment on April 26, 1994.

In response, WDA and Daishin USA filed a cross-complaint against Karasik, Shishido, Shinoda, Shapiro, Matsen, WDIC and others, setting forth causes of action for declaratory relief, rescission, indemnification, breach of

---

[2]Karasik, an accountant, had worked as the Building's comptroller prior to its purchase by Daishin USA. He thereafter was hired by WDA to continue in that position. He also performed a minimal amount of work for WDIC.

fiduciary duty, conversion and conspiracy. As to Shapiro and Matsen, WDA and Daishin USA sought rescission of the mutual release, indemnification for any liability to Karasik, damages for breach of fiduciary duty and damages for conversion. Answering the cross-complaint, Shapiro and Matsen pled the mutual release as a bar to the action against them. In addition, they sought attorney's fees and costs.[3]

At the beginning of trial, the trial court bifurcated trial of the question of the effect of the mutual release, that issue to be tried first by the court. After trial, the court found the mutual release was valid, binding and enforceable. By it, Daishin USA intended to release all claims relating to disputes between the parties, including those relating to the Building and its management and those arising from facts discovered subsequent to the execution of the mutual release. Even after learning of facts which might justify rescission of the mutual release, Daishin USA ratified the mutual release in order to obtain benefits for itself. Daishin USA therefore was estopped from seeking to rescind the mutual release.

Thereafter, the trial court found Daishin USA was not entitled to indemnification for liability imposed on it in the Karasik lawsuit. Shapiro and Matsen did not breach any fiduciary duty owed to Daishin USA.

The trial court entered a judgment: in favor of Karasik and against WDA and Daishin USA on the complaint; in favor of WDA and Daishin USA and against Shishido on WDA and Daishin USA's cross-complaint; in favor of Shapiro, Matsen, Shinoda and the other cross-defendants on WDA and Daishin USA's cross-complaint; and in favor of Matsen and against Daishin USA on Matsen's cross-complaint. WDA and Daishin USA appealed from this judgment. The appeal later was dismissed for lack of jurisdiction, in that there were still issues to be resolved in the action, so there was no final judgment. (*Karasik v. Wilshire-Doheny Associates, Ltd.* (July 30, 1999, B129053).)

Shapiro and Matsen filed a memorandum of costs and moved for an award of attorney's fees and costs as sanctions for bad faith conduct pursuant to Code of Civil Procedure section 128.5 and/or pursuant to indemnity agreements with Daishin USA under Code of Civil Procedure sections 1021 and 1033.5. They later claimed, in a supplemental brief, that they were entitled to attorney's fees under Corporations Code section 317, subdivision (c), as well. Shinoda also sought attorney's fees and costs.

---

[3]Matsen also filed a cross-complaint against Daishin USA for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit and account stated.

There are three indemnity provisions at issue. Daishin USA's February 10, 1989 articles of incorporation provide in article IX for indemnification of corporate officers, directors and employees for actions taken against them in their corporate capacity as long as they were acting in good faith. The indemnity provision includes reasonably incurred attorney's fees and costs.

On November 1, 1989, Daishin USA entered into an agreement of indemnity with Shapiro and Matsen. It provided that "[i]n order to induce the Indemnitees to provide assistance and services to Daishin with respect to Daishin's various real estate and business enterprises and investments in the United States, Daishin agrees to indemnify and hold the Indemnitees and their assigns, successors, heirs, and personal representatives harmless against any and all claims, suits, demand, actions, causes of actions [sic], damages, set-offs, liens, attachments, debts, expenses, judgments, or other liabilities of whatsoever kind or nature arising out of or related to the actions taken by the Indemnitees on behalf of Daishin and its affiliates . . . . This indemnification shall include reasonable attorneys fees and costs."

The December 7, 1989 document making Matsen vice-president and assistant secretary of Daishin USA provides in pertinent part "that Daishin U.S.A. Co., Ltd. hereby indemnifies and holds Jeffrey R. Matsen harmless from any and all claims, actions and liabilities brought against him with respect to his capacity as Vice President or Assistant Secretary or any actions he takes in good faith on behalf of the Corporation. This indemnity shall include the cost of reasonable attorneys fees and related expenses."

In one of several hearings on the attorney's fees issue, the trial court found the indemnity agreements were not broad enough to cover an award of attorney's fees in the instant action. At another hearing, it found article IX of Daishin USA's articles of incorporation was virtually identical to Corporations Code section 317. At that time, it found Corporations Code section 317, subdivision (e), inapplicable to the instant case. It found subdivision (d) of section 317 might be applicable, but first Shapiro, Matsen and Shinoda would have to show that they acted in good faith. This would require a trial on the issue, which Shapiro, Matsen and Shinoda declined, claiming subdivision (d) did not require a showing of good faith.

The trial court eventually denied the motions for attorney's fees. It found Corporations Code section 317 did not apply, in that, "in acting to establish the validity of the [mutual] release, [Shapiro, Matsen and Shinoda] were pursuing their own personal interest, were not acting for the corporate good and were not agents within the meaning of Corporations Code section

3.17(c). [They] are, therefore, not entitled to be indemnified for attorneys' fees incurred in defending Daishin[ USA]'s causes of action to rescind the [mutual] release and obtain indemnification."

## CONTENTION

 Appellants contend the trial court erred in finding they were not entitled to have Daishin USA indemnify them for their attorney's fees and costs incurred in successfully defending the cross-complaint against them under the indemnity provisions and Corporations Code section 317. For the reasons set forth below, we agree.

## DISCUSSION

*Corporations Code section 317*

Corporations Code section 317 (section 317), subdivision (c), provides in pertinent part that "[a] corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was an agent of the corporation, against expenses actually and reasonably incurred by that person in connection with the defense or settlement of the action if the person acted in good faith, in a manner the person believed to be in the best interests of the corporation and its shareholders." Subdivision (d) of section 317 provides that "[t]o the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) or in defense of any claim, issue, or matter therein, the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith." Subdivision (e)(4) of section 317 provides that, "[e]xcept as provided in subdivision (d), any indemnification under this section shall be made by the corporation only if authorized in the specific case, upon a determination that indemnification of the agent is proper in the circumstances because the agent has met the applicable standard of conduct set forth in subdivision (b) or (c), by . . . [¶] . . . [¶] [t]he court in which the proceeding is or was pending upon application made by the corporation or the agent or the attorney or other person rendering services in connection with the defense, whether or not the application by the agent, attorney or other person is opposed by the corporation." "Expenses" as used in the foregoing subdivisions include attorney's fees. (§ 317, subd. (a).)

 The policy considerations behind section 317 "are that persons who serve the corporation in good faith should, in the absence of certain conduct

(fraud, breach of fiduciary duties, etc.) be free from liability for corporate acts; indemnification encourages capable persons to perform their duties, secure in the knowledge that expenses incurred by them despite their honesty and integrity will be borne by the corporation. [Citations.]" (*Plate v. Sun-Diamond Growers* (1990) 225 Cal.App.3d 1115, 1122-1123 [275 Cal.Rptr. 667].)

In order for section 317 to apply, the action must have been brought against the indemnitee "by reason of the fact that the person is or was an agent of the corporation." (*Id.,* subds. (b), (c).) " 'In other words, the conduct of the agent which gives rise to the claim against him must have been performed in connection with his corporate functions and not with respect to purely personal matters.' [Citation.]" (*Plate v. Sun-Diamond Growers, supra,* 225 Cal.App.3d at p. 1123.) The agent must have been acting to promote the corporate good, not personal profit or interests. (*Id.* at pp. 1123-1124.)

In addition, subdivision (c) of section 317 requires that the agent act "in good faith, in a manner the person believed to be in the best interests of the corporation and its shareholders." It allows indemnification of an agent who is negligent or has made a mistake, but not one who has acted in bad faith or is guilty of intentional misconduct. (*Plate v. Sun-Diamond Growers, supra,* 225 Cal.App.3d at pp. 1124-1125.)

In the cross-complaint against appellants, Daishin USA alleged in its cause of action for rescission of the mutual release that appellants and other cross-defendants concealed from Daishin USA relevant facts regarding the relationships among them; that real and personal property improperly was transferred from Daishin USA to the cross-defendants without Daishin USA's knowledge and consent or proper consideration; that cross-defendants kept money that should have been paid to Daishin USA; that cross-defendants failed to disclose fees, commissions and kickbacks they received; and that they received double payment for services allegedly rendered. In the indemnification cause of action, Daishin USA and WDA alleged that appellants and other cross-defendants caused WDA to enter into the employment agreement with Karasik, knowing that the employment agreement was not in WDA's best interests.

Daishin USA and WDA alleged in one cause of action for breach of fiduciary duty that the foregoing action by appellants and other cross-defendants breached their fiduciary duty owed to Daishin USA and WDA. Further, the cross-defendants' actions were fraudulent, malicious, oppressive and intentional. An additional cause of action for breach of fiduciary duty

alleged that appellant Matsen intentionally, fraudulently and maliciously failed to disclose conflicts of interest related to other entities he represented or had interests in; usurped corporate opportunities; and overbilled and double-billed Daishin USA and WDA. Another breach of fiduciary duty cause of action alleged that appellant Shapiro intentionally, fraudulently and maliciously failed to disclose conflicts of interest related to other entities he represented or had interests in.

In determining whether section 317 applies, the question to be asked is whether the foregoing alleged acts, for which appellants were made parties to the lawsuit, were " 'performed in connection with [appellants'] corporate functions and not with respect to purely personal matters.' " (*Plate v. Sun-Diamond Growers, supra,* 225 Cal.App.3d at p. 1123.) It is not, as the trial court saw it, whether "in acting to establish the validity of the [mutual] release, [appellants] were pursuing their own personal interest, were not acting for the corporate good and were not agents within the meaning of Corporations Code section 317(c)." Neither is it, as respondents argue, whether "at the time of the Release, appellants were acting on their own behalf, not on behalf of Daishin." " '[T]he conduct of the [appellants] which [gave] rise to the claim against [them]' " (*Plate v. Sun-Diamond Growers, supra,* 225 Cal.App.3d at p. 1123) was that set forth above, not anything having to do with the execution or defense of the mutual release. The mutual release was involved in the litigation only because it was necessary that the release be set aside in order for appellants to be held liable for their alleged conduct.

The question as to whether section 317 applies is a factual one. (*Plate v. Sun-Diamond Growers, supra,* 225 Cal.App.3d at p. 1125.) Therefore, the trial court erred in determining, as a matter of law, section 317 did not apply because appellants were pursuing their own interests in opposing rescission of the mutual release. A trial on the allegations of the complaint is necessary to determine whether appellants' alleged acts, set forth on pages 1389-1390, *ante,* were in fact taken on behalf of the corporation, or whether appellants were acting to further their own personal interests.

Additionally, as appellants point out, section 317, subdivision (c), applies to actions "*by* or in the right of the corporation to procure a judgment in its favor." (Italics added.) It is not, by its terms, limited in application to third party lawsuits. Thus, that appellants were sued by the corporation is not a bar to recovery.

Appellants claim that under subdivision (d) of section 317, they were entitled to indemnification, in that they were "successful on the merits in

defense of" the action. Respondents counter that appellants did not prevail on the merits in their defense of the action but rather prevailed on a technical defense. Since they were not "acquitted of any wrongdoing," they were not entitled to indemnification under section 317, subdivision (d). (*Plate v. Sun-Diamond Growers, supra,* 225 Cal.App.3d at p. 1124.)

*American Nat. Bank & Trust Co. v. Schigur* (1978) 83 Cal.App.3d 790 [148 Cal.Rptr. 116], cited by appellants, addressed the question whether voluntary dismissal with prejudice constitutes success on the merits. The court concluded the legislative intent behind subdivision (d) of section 317 was "that mandatory indemnification should depend upon a judicial determination of the actual merits of the agent's defense." (83 Cal.App.3d at p. 793.) Thus, the dismissal was not success on the merits. The court did not address the question whether the nature of the defense would affect the determination as to whether success was on the merits.

■ In the context of a malicious prosecution action, the required favorable termination of the underlying action is one "reflecting on the merits of the action *and* the plaintiff's innocence of the misconduct alleged." (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1147, 1149 [85 Cal.Rptr.2d 726], italics added.) There is a two-part showing. Thus, when the underlying action is terminated in some manner other than by a judgment on the merits, the court examines the record "to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed. If resolution of the underlying action leaves a residue of doubt about the plaintiff's innocence or liability, it is not a favorable termination sufficient to support a cause of action for malicious prosecution." (*Id.* at p. 1149.)

■ Section 317, subdivision (d), by its terms, requires only a showing that the agent has been "successful on the merits in defense of [the] proceeding." This is a showing that "the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed." (*Sierra Club Foundation v. Graham, supra,* 72 Cal.App.4th at p. 1149.)

The trial court's determination in the instant case, as to the rescission and breach of fiduciary duty causes of action, was that the action would not succeed, in that the mutual release barred its prosecution. The mutual release operated to effect a relinquishment of the right to pursue the claims raised against appellants. (*Hastings v. Matlock* (1980) 107 Cal.App.3d 876, 882 [166 Cal.Rptr. 229].) While appellants' innocence of the misconduct alleged was not established, appellants' lack of liability was established. In this respect, the determination is one on the merits.

Respondents claim it is not, citing *Silver v. Shemanski* (1949) 89 Cal.App.2d 520 [201 P.2d 418] and Code of Civil Procedure section 597. In *Silver*, the plaintiff filed a complaint for declaratory relief against the defendants. (89 Cal.App.2d at p. 524.) He subsequently entered into a compromise agreement with one of the defendants, agreeing to dismiss the action for consideration. (*Id.* at pp. 526-527.) The plaintiff did not dismiss the action, however. Sometime thereafter, that defendant filed an answer and a cross-complaint. (*Id.* at pp. 527-528.) In the cross-complaint, she sought to set aside the compromise agreement. When the case was called for trial, the plaintiff sought to try first the question whether the compromise agreement should be set aside, in that, if the agreement was found to be valid, that finding would dispose of the remaining issues. The trial court tried that issue first, found the compromise agreement to be valid, and dismissed the cross-complaint. (*Id.* at pp. 528-529.) The question on appeal was whether the trial court erred in first trying the question of the validity of the compromise agreement. (*Id.* at p. 529.)

The court observed that pursuant to Code of Civil Procedure former section 2042, the trial court had discretion to regulate the order of proof.[4] (*Silver v. Shemanski, supra*, 89 Cal.App.2d at p. 529.) Code of Civil Procedure section 597 provides the trial court with authority to hear first a special defense that would bar a recovery by the plaintiff. (*Silver, supra*, at p. 530.) The court then noted that "section 597 of the Code of Civil Procedure is but a legislative recognition of the power of a trial court under section 2042 of the Code of Civil Procedure and places an imprimatur upon a practice which contemplates a trial first of the severable issues which if determined adversely to the plaintiff will obviate the necessity of a protracted trial of issues which by such determination are rendered irrelevant and immaterial. The rule in question is supported by reasons based upon the economical and speedy administration of justice." (*Ibid.*) The court thereafter concluded that the trial court was justified in trying first the question of the validity of the compromise agreement, since determination of that issue might render trial on the remaining issues unnecessary. (*Id.* at pp. 530-531.)

Code of Civil procedure section 597 allows trial first of special defenses not involving the merits of the action, such as that the action is barred by the statute of limitations or by a prior judgment. *Silver did not* hold that the question of the validity of the compromise agreement was a special defense not on the merits triable under section 597. *Silver* held that question could be tried first, but it allowed that the trial court had the power to try it first under Code of Civil Procedure section 2042. Therefore, *Silver* does not support

---

[4]This provision has been replaced by Evidence Code section 320.

respondents' position that the defense of a mutual release is one not involving the merits of the case.

Based on the foregoing, we conclude that appellants were successful on the merits in their defense of the rescission and breach of fiduciary causes of action. They established there was no merit to respondents' claims, in that the mutual release barred any liability on their part.[5]

As to the indemnification cause of action, the trial court found Daishin USA was not entitled to indemnification for liability imposed on it in the Karasik lawsuit, in that appellants did not breach any fiduciary duty owed to it. Again, this would constitute success on the merits.

Appellants next argue that because they were successful on the merits in their defense of the action, they were entitled to indemnification under subdivision (d) of section 317, and they were not required to meet the good faith standard of subdivision (e) of that section. As previously stated, subdivision (d) provides that "[t]o the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) or in defense of any claim, issue, or matter therein, the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith." The subdivision does not mention a good faith requirement, unlike subdivisions (b), (c), and (e). Those subdivisions require that the agent have acted "in good faith, in a manner the person believed to be in the best interests of the corporation and its shareholders." (Subd. (c).) They also make indemnification permissive.

As a general rule, "[w]hen the Legislature has used a term or phrase in one part of a statute but excluded it from another, courts do not imply the missing term or phrase in the part of that statute from which the Legislature has excluded it." (*People v. Gardeley* (1996) 14 Cal.4th 605, 621-622 [59 Cal.Rptr.2d 356, 927 P.2d 713].) The Legislature having omitted a good faith requirement from subdivision (d) of section 317, this court should not read it into the statute. (14 Cal.4th at pp. 621-622.)

*In re Christian Life Center* (9th Cir. 1987) 821 F.2d 1370 interpreted the provisions of section 317 to impose different standards for subdivision (d) than for the other subdivisions. The court held that agents "who prevail on the merits in litigation have a mandatory right to indemnity of litigation

---

[5]This conclusion is based on the assumption the trial court properly found the mutual release was valid and barred any liability on appellants' part. Respondents attack this finding in their appeal, which we have yet to decide.

expenses. Cal.Corp.Code § 317(d). Even if they do not prevail, they may still be indemnified in nonderivative actions if the corporation or the court hearing the litigation finds they acted 'in good faith and in a manner [they] believed to be in the best interests of the corporation.' *Id.* § 317(b), (e). *Either* prevailing on the merits *or* a finding of good faith is a prerequisite to the indemnity award." (*In re Christian Life Center, supra,* at p. 1374, italics added.)

Cases from other jurisdictions have reached similar results with respect to similar statutes. In *Waltuch v. Conticommodity Services, Inc.* (2d Cir. 1996) 88 F.3d 87, the court in interpreting a similar provision of Delaware law held that once an agent is successful on the merits, he is entitled to mandatory indemnification. (At pp. 95-97.) It is not necessary that the agent achieve "moral exoneration." (*Id.* at p. 96.) "[I]t cannot matter why [the agent] emerged unscathed . . . , or whether his success was deserved." (*Ibid.*) Success on the merits requires indemnification. (*Id.* at p. 97, and cases cited therein.)

We agree with this conclusion. Subdivision (d) of section 317 does not require a finding of good faith, only a finding of success on the merits. Thus, appellants were not required to establish good faith before being entitled to indemnification under that subdivision.

In sum, with respect to section 317, subdivision (d), appellants have met the requirement that they have been successful on the merits in defending the action against them. They need not demonstrate good faith. They are not barred from recovery because the action against them was brought by the indemnifying corporation. They still must establish, however, their agency, i.e., that the alleged acts, for which they were made parties to the lawsuit, were " 'performed in connection with [appellants'] corporate functions and not with respect to purely personal matters.' " (*Plate v. Sun-Diamond Growers, supra,* 225 Cal.App.3d at pp. 1123, 1124.)

Appellants also claim the trial court erred in failing to exercise its discretion to determine whether they were entitled to indemnification for their attorney's fees and costs under subdivision (e) of section 317. In light of the conclusion reached above, that if they are entitled to indemnification, they are entitled to it under subdivision (d), this claim need not be addressed.

*The Indemnity Provisions*

Article IX of Daishin USA's articles of incorporation provides in paragraph (1): "The corporation shall indemnify each person who was or is a

party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he is or was a director, officer or employee of the corporation, or is or was serving at the request of the corporation as a director, officer or employee of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of this corporation . . . ."

Paragraph (2) of article IX contains similar provisions with respect to an "action or suit by or in the right of the corporation to procure a judgment in its favor." An exception to indemnification is provided "in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to this corporation . . . ." Paragraph (3) provides for indemnification "against expenses (including attorneys' fees) actually and reasonably incurred" when a person covered under paragraph (1) or (2) "has been successful on the merits or otherwise in defense" of the action or suit.[6]

In addition, the December 7, 1989 document making Matsen vice-president and assistant secretary of Daishin USA provides in pertinent part "that Daishin U.S.A. Co., Ltd. hereby indemnifies and holds Jeffrey R. Matsen harmless from any and all claims, actions and liabilities brought against him with respect to his capacity as Vice President or Assistant Secretary or any actions he takes in good faith on behalf of the Corporation. This indemnity shall include the cost of reasonable attorneys fees and related expenses."

Finally, Daishin USA's November 1, 1989 indemnity agreement with Shapiro and Matsen provided that "[i]n order to induce the Indemnitees to provide assistance and services to Daishin with respect to Daishin's various real estate and business enterprises and investments in the United States, Daishin agrees to indemnify and hold the Indemnitees and their assigns, successors, heirs, and personal representatives harmless against any and all claims, suits, demand, actions, causes of actions [sic], damages, set-offs, liens, attachments, debts, expenses, judgments, or other liabilities of whatsoever kind or nature arising out of or related to the actions taken by the

---

[6]The "or otherwise" language, while present in the American Bar Association Model Business Corporations Act (ABA Model Bus. Corp. Act, § 8.52), from which section 317 was derived, was omitted from section 317, subdivision (d). (*American Nat. Bank & Trust Co. v. Schigur, supra,* 83 Cal.App.3d at p. 793.)

Indemnitees on behalf of Daishin and its affiliates . . . . This indemnification shall include reasonable attorneys fees and costs."

As noted in *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949 [17 Cal.Rptr.2d 242], attorney's fees ordinarily are not recoverable as costs unless authorized by statute or agreement. (At p. 968.) The indemnity provisions at issue here constitute agreements authorizing recovery of attorney's fees as costs where the provisions are applicable.

*Myers* continues: "Under California law, an '[i]ndemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person.' (Civ. Code, § 2772.) 'An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion . . . .' (Civ. Code, § 2778, subd. 3.)" (*Myers Building Industries, Ltd. v. Interface Technology, Inc., supra,* 13 Cal.App.4th at p. 968.)

■ *Myers* goes on to add that "[a]n indemnitor in an indemnity contract *generally* undertakes to protect the indemnitee against loss or damage through liability to a third person." (*Myers Building Industries, Ltd. v. Interface Technology, Inc., supra,* 13 Cal.App.4th at p. 968, italics added.) However, each indemnity agreement is "interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract. [Citation.] The extent of the duty to indemnify is determined from the contract. [Citation.] The indemnity provisions of a contract are to be construed under the same rules governing other contracts with a view to determining the actual intent of the parties. [Citation.]" (*Id.* at pp. 968-969.)

■ There is nothing in the language of any of the three indemnity provisions specifically limiting their application to third party lawsuits. Respondents point to no extrinsic evidence introduced to demonstrate that the parties intended these provisions to apply to third party lawsuits only. (*Estate of Russell* (1968) 69 Cal.2d 200, 209 [70 Cal.Rptr. 561, 444 P.2d 353]; *Moss Dev. Co. v. Geary* (1974) 41 Cal.App.3d 1, 9 [115 Cal.Rptr. 736].) Thus, it has not been shown the indemnity provisions are inapplicable merely because appellants seek indemnification for attorney's fees and costs incurred in an action brought by the indemnitor, Daishin USA. In fact, paragraph (2) of article IX of the articles of incorporation specifically applies to an "action or suit by or in the right of the corporation to procure a judgment in its favor."

As the trial court noted, the provisions of article IX are virtually identical to those of section 317. If appellants make the requisite showing for indemnification under section 317, they would be entitled to indemnification under article IX as well. As to the December 7, 1989 document, again, the requisite showing under section 317, including a showing of good faith, would entitle appellant Matsen to indemnification under this provision.[7]

The November 1, 1989 indemnity agreement does not, by its terms, require a showing of good faith. It does require, however, that appellants' actions have been undertaken "on behalf of Daishin and its affiliates." Thus, the same showing of agency required for indemnity under section 317, subdivision (d), would have to be made to entitle appellants to indemnity under this agreement. This agreement does not, by its terms, require a showing of good faith or success on the merits for it to be applicable.

That portion of the judgment denying appellants' motions for attorney's fees is reversed. The case is remanded for proceedings consistent with the views expressed herein.[8] Appellants are to recover costs on appeal.

Ortega, J., and Mallano, J., concurred.

---

[7]While section 317, subdivision (g), allows a corporation to provide additional indemnification to directors and officers, it and Corporations Code section 204, subdivision (a), paragraphs (10) and (11), impose a good faith requirement where such additional indemnification rights are provided in the articles of incorporation.

[8]Such proceedings would, at this point, consist of trial on the question whether appellants are entitled to attorney's fees pursuant to section 317 or the indemnity agreements by virtue of their having acted on behalf of respondents in doing the acts for which they were sued. However, our remand is subject to our future decision in *Wilshire-Doheny Associated, Ltd. v. Shapiro, supra,* B136477. Should that appeal be resolved in respondents' favor, there may be other issues which the trial court would need to resolve before it can determine whether appellants are entitled to attorney's fees.