Filed 9/16/14  Tomjanovich v. Coldwell Banker Residential Brokerage Co. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b).  This opinion has not been certified for publication or ordered published for purposes of rule 977.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| RUDY TOMJANOVICH et al., <br><br> Cross-complainants and Appellants, <br><br> v. <br><br> COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY et al., <br><br> Cross-defendants and Respondents. | B247887 <br><br> (Los Angeles County <br> Super. Ct. No. SC101085) <br><br><br> **ORDER MODIFYING OPINION** <br><br> **[CHANGE IN JUDGMENT]** |

THE COURT:

The opinion herein, filed on August 29, 2014, is modified as follows:

1.      At page 1, the title is modified so that it reads:

RUDY TOMJANOVICH et al., Cross-complainants and Appellants, v. COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY et al., Cross-defendants and Respondents.

2.      At page 1, the counsel listing is deleted and replaced with:

Daniels, Fine, Israel, Schonbuch & Lebovits, Paul R. Fine, Mark R. Israel and Maureen M. Michail for Cross-complainants and Appellants.

Obrand Law Group, Michael F. Obrand, Jesse D. Obrand; Gemmill, Baldridge & Yguico and Carlos V. Yguico for Cross-defendants and Respondents.

June Babiracki Barlow and Neil Kalin for California Association of Realtors as Amicus Curiae on behalf of Cross-defendant and Respondent Coldwell Banker Residential Brokerage Company.

3. At page 3, line 25, delete the sentence beginning with "The jury also determined that Coldwell Banker . . ." and add the following in its place:

The jury also determined that Coldwell Banker, Mr. Stimming, and Mr. Becker had not acted negligently nor breached any fiduciary duty to the Tomjanoviches.

4. At page 13, the last sentence of the Disposition is deleted and replaced with: Respondents are awarded their costs on appeal.

There is a change in judgment.

_____

BIGELOW, P. J.                    FLIER, J.                    GRIMES, J.

2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| STEVEN BARDACK, | B247887 |
| Plaintiff, | (Los Angeles County Super. Ct. No. SC101085) |
| v. | |
| RUDY TOMJANOVICH et al., | |
| Defendants, Cross-complainants and Appellants; | |
| COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY, | |
| Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. J. Stephen Czuleger, Judge.  Affirmed.

Daniels, Fine, Israel, Schonbuch & Lebovits, Mark R. Israel and Maureen M. Michail for Defendants, Cross-complainants and Appellants.

Obrand Law Group, Michael F. Obrand and Jesse D. Obrand for Cross-defendant and Respondent.

June Babiracki Barlow and Neil Kalin for California Association of Realtors as Amicus Curiae on behalf of Cross-defendant and Respondent.

\* \* \* \* \* \* \* \* \* \*

Rudy and Sophie Tomjanovich appeal the trial court's order awarding attorney fees in the amount of $348,372 to Coldwell Banker Residential Brokerage Company (Coldwell Banker) pursuant to an indemnification clause contained in the standard California Association of Realtors residential listing agreement the parties signed when the Tomjanoviches retained Coldwell Banker to sell their home. After the Tomjanoviches were sued by the buyer for failing to disclose various issues with the home, they cross-complained against Coldwell Banker. The buyer ultimately prevailed against the Tomjanoviches, Coldwell Banker prevailed on the cross-complaint, and the trial court awarded Coldwell Banker its attorney fees based on the parties' agreement.

On appeal, the Tomjanoviches argue the indemnification provision covered only third party claims against Coldwell Banker, and not a direct claim between the Tomjanoviches and Coldwell Banker. Alternatively, the Tomjanoviches contend the trial court abused its discretion by awarding fees for an amicus brief Coldwell Banker submitted to the California Supreme Court, reasoning the amicus brief was not related to Coldwell Banker's defense of the cross-complaint. We find the indemnification agreement encompasses direct claims, and that substantial evidence supports the trial court's ruling that the amicus brief was related to the defense of the cross-complaint, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation arose out of the sale of a $6.5 million home located in the Pacific Palisades area of Los Angeles by Rudy and Sophie Tomjanovich to Steven Bardack. The Tomjanoviches acquired the custom built property in 2004 for $4.25 million. At the time they bought the home, they were given reports and disclosures indicating that the home had active water leaks. In December 2004, the Tomjanoviches experienced a water leak in the entry foyer. In April 2006, another leak occurred in the foyer skylight. They listed their home for sale with Coldwell Banker in 2007, signing a standard California Association of Realtors Listing Agreement, which provided in part:

> "Seller further agrees to indemnify, defend and hold Broker
> harmless from all claims, disputes, litigation, judgments, and attorney fees

2

arising from any incorrect information supplied by Seller, or from any material facts that Seller knows but fails to disclose."

In May 2007, Mr. Bardack agreed to purchase the home for $6.5 million under the terms of a California Association of Realtors Residential Purchase Agreement. Under that agreement, the Tomjanoviches were required to "disclose known material facts and defects affecting the Property" to Mr. Bardack. (Capitalization omitted.) The Tomjanoviches did not disclose to Mr. Bardack or Coldwell Banker the reports they had received at the time they bought the home, or that the property had water leaks while they owned it.

After he bought the home, Mr. Bardack experienced several leaks and sued the Tomjanoviches for breach of contract, negligence per se, intentional misrepresentation, negligent misrepresentation, concealment, rescission, and negligence for their failure to disclose the water leaks.[1] The Tomjanoviches denied any wrongdoing and filed a cross-complaint against Coldwell Banker for equitable and implied contractual indemnity, alleging Coldwell Banker was negligent and breached its fiduciary duties to the Tomjanoviches in connection with the sale of their home to Mr. Bardack. The cross-complaint also named brokers and respondents William Stimming and David Becker, as well as others who are not parties to this appeal. Coldwell Banker moved for summary judgment on the cross-complaint, but the motion was denied.

The trial court bifurcated the trials, limiting the first phase of the trial to Mr. Bardack's claims against the Tomjanoviches and the Tomjanoviches' cross-complaint against Coldwell Banker. In a special verdict, the jury found the Tomjanoviches liable to Mr. Bardack for intentional misrepresentation, concealment, and breach of contract. The jury awarded Mr. Bardack compensatory damages of over $2.8 million and punitive damages of $250,000. The jury also determined that Coldwell

---

[1]    He also sued various inspectors, construction, and design professionals.

Banker, Mr. Stimmer, and Mr. Becker had not acted negligently nor breached any fiduciary duty to the Tomjanoviches.

Coldwell Banker then filed a motion for recovery of attorney fees and costs in the amount of $367,790.57 pursuant to the indemnity clause in the listing agreement. At the hearing on the motion, the trial court concluded the agreement held "Coldwell Banker harmless from all claims, disputes, litigation, judgment, and attorney fees without limitation when the prerequisite of incorrect information has been provided by seller is met." Finding the cross-complaint against Coldwell Banker arose from a failure to provide the buyer complete and correct information, and the indemnity clause encompassed direct claims, the trial court determined that the agreement obligated the Tomjanoviches to pay attorney fees incurred by Coldwell Banker in defending against the cross-complaint. A request for $19,500 in costs was denied based on an ambiguity in the agreement (whether "costs" were recoverable) that the court construed against Coldwell Banker. Judgment was entered in favor of Coldwell Banker in the amount of $348,372.

This timely appeal followed.

## DISCUSSION

### 1. The Indemnity Provision Encompasses Direct Claims

The Tomjanoviches contend the trial court erred in finding the indemnity agreement applied to their claims against Coldwell Banker, reasoning indemnity provisions apply only to third party claims unless language in the agreement "clearly and explicitly" shows an intent to encompass direct disputes between the indemnitee and indemnitor, and that there is no such language in the California Association of Realtors residential listing agreement. Coldwell Banker argues the agreement broadly applied to both direct and third party claims, absent language limiting its scope to third party claims. We agree with Coldwell Banker, and interpret the indemnity provision as encompassing both direct and third party claims.

Because the trial court interpreted the indemnification provision without the use of extrinsic evidence, we exercise our independent judgment in interpreting the contract language de novo. (*Parsons v. Bristol Development Company* (1965) 62 Cal.2d 861,

4

865; *G. Voskanian Construction, Inc. v. Alhambra Unified School District* (2012) 204 Cal.App.4th 981, 995; *Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1336.)

"Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." (Civ. Code, § 2772.) Generally, an indemnity agreement " 'undertakes to protect the indemnitee against loss or damage through liability to a third person.' [Citation.]" (*Wilshire-Doheny Associates, Ltd. v. Shapiro* (2000) 83 Cal.App.4th 1380, 1396 (*Wilshire-Doheny*); see also *Myers Bldg. Indus., Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 969 (*Myers Bldg.*) ["A clause which contains the words 'indemnify' and 'hold harmless' is an indemnity clause which generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons."].)

"The term 'indemnity' encompasses any duty to pay for another's loss or damage and is not limited to reimbursement of third party claims." (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 556 (*Dream Theater*).) So while indemnity generally relates to third party claims, "this general rule does not apply if the parties to a contract use the term 'indemnity' to include direct liability as well as third party liability." (*Id.* at p. 555; see also Civ. Code, § 2772.) " 'An indemnity agreement is to be interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract.' [Citation.]" (*Dream Theater, Inc.* at p. 555; see also *Wilshire-Doheny*, *supra*, 83 Cal.App.4th at p. 1396.)

In *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1016 (*Zalkind*), Ceradyne, Inc., entered into an asset purchase agreement with Stanley and Elizabeth Zalkind and Quest Technology, LP, a limited partnership owned by the Zalkinds. Ceradyne paid the bulk of the purchase price with unregistered shares of Ceradyne stock. The asset purchase agreement contained an indemnity provision, stating that:

> "Ceradyne 'shall indemnify, hold harmless, and defend' the Zalkinds
> and Quest from and against 'any and all' damages and losses incurred by
> the 'Zalkinds and Quest that arise from or are in connection with [¶] . . .
> [¶] . . . [a]ny breach or default by [Ceradyne] of its covenants or

5

agreements contained in this Agreement.' " (*Zalkind*, *supra*, 194 Cal.App.4th at p. 1027.)

The Zalkinds and Quest sued Ceradyne for breach of the contract, alleging Ceradyne failed to timely register its stock with the Securities and Exchange Commission, which prevented them from selling their Ceradyne stock when it rose briefly to a market high. Ceradyne moved for summary judgment, arguing the complaint was time-barred because it was for indemnification, and the agreement required that any claim for indemnification had to be brought within 24 months of the closing date. The Zalkinds and Quest did not dispute their complaint was filed more than 24 months after the closing date and would be time-barred if it was a claim for indemnification under the agreement. The Court of Appeal affirmed the grant of summary judgment, finding the complaint was for indemnification, rejecting the argument the indemnification clause excluded direct claims because it did not expressly limit the meaning of "indemnity" to third party claims, instead extending indemnification to "any and all" damages arising from the breach of the agreement. (*Zalkind*, *supra*, 194 Cal.App.4th at p. 1027.)

*Wilshire-Doheny*, *supra*, 83 Cal.App.4th 1380, concerned two contractual indemnity provisions executed by a corporation on behalf of two of its employees, an attorney and a real estate broker. The first indemnity agreement was executed in favor of both of the employees, and provided that the corporation " 'agrees to indemnify and hold the Indemnitees and their assigns, successors, heirs, and personal representatives harmless against any and all claims, suits, demand, actions, causes of actions [*sic*], damages, set-offs, liens, attachments, debts, expenses, judgments, or other liabilities of whatsoever kind or nature arising out of or related to the actions taken by the Indemnitees on behalf of [the corporate indemnitor] and its affiliates. . . . This indemnification shall include reasonable attorneys fees and costs.' " (*Id*. at p. 1387.) The second indemnity provision was found in an agreement executed when the attorney employee later became a corporate officer. (*Id*. at pp. 1387, 1395.) That agreement provided that the corporation " 'hereby indemnifies and holds [the attorney/corporate officer] harmless from any and all claims, actions and liabilities brought against him with respect to his [corporate]

6

capacity . . . or any actions he takes in good faith on behalf of the Corporation.  This indemnity shall include the cost of reasonable attorneys fees and related expenses.' " (*Id.* at p. 1395.)

Later, the two employees became embroiled in litigation with the corporation, and the employees ultimately prevailed.  (*Wilshire-Doheny*, *supra*, 83 Cal.App.4th at pp. 1385-1386.)  They moved for attorney fees and costs relying upon, among other things, the two indemnity agreements.  The trial court concluded that the indemnity agreements were not broad enough to cover an award of attorney fees.  The Court of Appeal reversed, finding "[t]here is nothing in the language of any of the [two] indemnity provisions specifically limiting their application to third party lawsuits.  [The corporate indemnitor] point[s] to no extrinsic evidence introduced to demonstrate that the parties intended these provisions to apply to third party lawsuits only.  [Citations.]  Thus, it has not been shown the indemnity provisions are inapplicable merely because appellants seek indemnification for attorney's fees and costs incurred in an action brought by the indemnitor." (*Id.* at p. 1396.)

In *Dream Theater*, *Inc.*, *supra*, 124 Cal.App.4th 547, an indemnity provision in an asset purchase agreement for an internet-based multimedia and entertainment business provided that "[the] [s]ellers agreed to indemnify buyer Dream Theater, LLC against (a) any breach by Sellers of any representations or warranties made in the Contract; (b) any breach of any covenant in the Contract or ancillary documents; and (c) all liabilities except those buyer assumed.  Buyer Dream Theater, LLC agreed to indemnify seller Dream Theater, Inc. against (a) any breach by buyer of any representations or warranties made in the Contract; (b) any breach of any covenant in the Contract or ancillary documents; and (c) all liabilities buyer assumed." (*Id.* at p. 554.)  In the context of determining arbitrability (the arbitration clause was located in the portion of the contract addressing indemnification, and the party seeking to avoid arbitration argued that the clause applied only to third party claims and not direct claims between the parties), the appellate court deemed that provision broad enough to encompass direct claims,

7

reasoning the contract clearly required both parties to indemnify the other for their own wrongdoing. (*Id.* at p. 555.)

As in *Zalkind*, *Wilshire-Doheny*, and *Dream Theater, Inc.*, the indemnity provision here is broad, holding Coldwell Banker harmless from "all claims, disputes, litigation, judgments, and attorney fees arising from any incorrect information supplied by Seller, or from any material facts that Seller knows but fails to disclose." Clearly, it was the expectation of the parties that if Coldwell Banker was drawn into litigation as a result of the Tomjanoviches' misrepresentations, Coldwell Banker would be reimbursed for its costs. The Tomjanoviches are unable to point to any language in the agreement limiting indemnity solely to third party claims. They argue that these cases are distinguishable because the indemnity provisions at issue there resulted from arm's length negotiations to include direct claims, whereas the indemnity provision here resulted from a "pre-printed form contract." This argument is unpersuasive. There is no language in the *Zalkind*, *Dream Theater*, *Inc.*, or *Wilshire-Doheny* opinions limiting their application to disputes where the indemnity provision arises from arm's length negotiations.

The Tomjanoviches also contend that the "indemnify, defend and hold harmless" language used here has been interpreted by California courts as referring only to third party liability claims. They assert that direct claims are covered by an indemnification agreement "*only* where the contract clearly so specifies." In support of this position, the Tomjanoviches rely on *City of Bell v. Superior Court (Rizzo)* (2013) 220 Cal.App.4th 236 (*Rizzo*), where the court analyzed an indemnity agreement contained in an employment contract between the City of Bell and its former employee, Robert Rizzo. (*Id.* at p. 252.) In that case, the City alleged Rizzo used his position to misappropriate City funds, and filed suit seeking to recover the misappropriated funds. (*Ibid.*) Rizzo sought to have the City indemnify him against claims brought by the Attorney General (on behalf of the City) for his wrongdoing. The pertinent language of the agreement stated, in part:

> "City shall defend, hold harmless and indemnify Employee [Rizzo]
> against any claim, demand, judgment or action, of any type or kind, arising
> out of any act or failure to act, by Employee, if such act or failure was

8

within the course and scope of Employee's employment. City may compromise and settle any such claim or suit provided City shall bear the entire cost of any such settlement." (*Rizzo*, *supra*, 220 Cal.App.4th at p. 243.)

The court concluded "clear and explicit language" must be used in the agreement when contracting parties wish to shift the risk of loss arising from one party's wrongful acts to the other party. (*Rizzo*, *supra*, 220 Cal.App.4th at p. 250.) This "clear and explicit" standard also applies to exculpatory clauses, where one party seeks to release itself from liability to the other. (*Ibid*.) In addition, the court found that the language in the last sentence of the indemnity provision permitting the City to "settle any such claim" could only be reasonably interpreted as encompassing third party claims because, "[t]he idea that the City 'may compromise and settle' a suit brought by the City against Rizzo, if it pays itself the settlement amount, would make no sense whatever." (*Id.* at p. 252.) The court concluded the indemnity provision contained in the employment agreement applied only to third party claims. (*Ibid.*)

We find no fault with the *Rizzo* opinion but find it does not apply in this case, where Coldwell Banker does not seek indemnification for its own wrongdoing. Also, Coldwell Banker does not seek to insulate itself from liability with an exculpatory clause. Rather, Coldwell Banker sought fees arising from claims brought against it as a result of the Tomjanoviches' own wrongdoing by failing to disclose construction defects in their home known only to them and not known by Coldwell Banker, which ultimately caused Coldwell Banker to suffer significant attorney fees.[2]

The Tomjanoviches also cite a number of decisions concerning an indemnitor's attempt to recover attorney fees against an indemnitee based on the reciprocity principle

---

[2]     The Tomjanoviches also rely on *Queen Villas Homeowners Assn. v. TCB Property Management* (2007) 149 Cal.App.4th 1 (*Queen Villas*), for the same proposition that an indemnification agreement requires "clear and explicit" language to cover direct claims between indemnitee and indemnitor. As with *Rizzo*, this reliance is misplaced because *Queen Villas* involved a pre-loss exculpatory agreement which is irrelevant to this appeal.

9

of Civil Code section 1717. (See *Trope v. Katz* (1995) 11 Cal.4th 274; *Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328; *Building Maintenance Serv. Co. v. AIL Sys., Inc.* (1997) 55 Cal.App.4th 1014, 1031; *Myers Bldg.*, *supra*, 13 Cal.App.4th at p. 963.) In these cases, the indemnitor was denied attorney fees because "the provisions of [section] 1717 were never intended to inflict upon the indemnitee the obligation to indemnify his indemnitor in similar circumstances." (*Myers Bldg.*, at p. 973.) These cases are no more instructive than *Rizzo* or *Queen Villas*, discussed *ante*. Coldwell Banker is an indemnitee seeking attorney fees under an indemnification provision in the California Association of Realtors residential listing agreement, not under section 1717.**3** These cases do nothing to alter our interpretation of the indemnification provision at issue in this case.

Because the indemnity agreement encompasses both direct and third party claims, we affirm the trial court's award of attorney fees that Coldwell Banker incurred defending against the cross-complaint.

**2.     The Court Did Not Abuse Its Discretion by Awarding Fees for the *Lyon* Amicus Brief**

The Tomjanoviches argue the trial court abused its discretion in awarding attorney fees in the amount of $9,718 for an amicus brief Coldwell Banker submitted to the California Supreme Court asking it to depublish or review *William L. Lyon & Associates, Inc. v. Superior Court (Henley)* (2012) 204 Cal.App.4th 1294 (*Lyon*).

We review a challenge to an award of fees under an abuse of discretion standard. (*Atkins v. Enterprise Rent-A-Car Company of San Francisco* (2000) 79 Cal.App.4th 1127, 1134 ["the trial court is the best judge of the value of the services rendered in its court . . . ."].) We must affirm an award of attorney fees absent a showing that the trial court clearly abused its discretion. (*Jones v. Union Bank of Calif.* (2005) 127

---

**3**     Coldwell Banker has offered an alternative theory of recovery under Civil Code section 1717, which we decline to address because we find that the contractual indemnification provision entitles them to attorney fees.

10

Cal.App.4th 542, 549-550.)  A fee award will not be reversed unless it "shocks the conscience" or is not supported by the evidence.  (*Id.* at p. 550.)

Coldwell Banker was represented by two law firms in the trial court.  Obrand Law Group, APC handled the discovery and was lead trial counsel.  Gemmill, Baldridge & Yguico (the Gemmill firm) prepared the motion for summary judgment, the motions in limine, and the motion for directed verdict.  The Gemmill firm litigated the purely legal issues relating to the merits of the Tomjanoviches' cross-complaint, damages claims and the existence and scope of legal duties.  Both firms submitted declarations from the partners in charge of Coldwell Banker's defense in this action, summarizing the lawyers' backgrounds, the scope of their representation, the hours worked, and the hourly rates charged for their services, along with extensive daily billing summaries.  The trial court's judgment for Coldwell Banker in the amount of $348,372 included $214,683 related to the services performed by Obrand Law Group and $133,689 related to the services of the Gemmill firm.

On appeal, the Tomjanoviches ask us to reverse $9,718 of the fees awarded for the services of the Gemmill firm for preparation of an amicus brief submitted to the California Supreme Court asking it to depublish or review the *Lyon* opinion.  Before this case was tried to the jury, the Third District Court of Appeal filed the *Lyon* opinion, which addressed various issues relating to the liability of real estate brokers in a fiduciary relationship with a buyer or seller.  In its decision, the court announced that "the fiduciary duty of real estate brokers to their clients does not arise under contract."  (*Lyon*, *supra*, 204 Cal.App.4th at p. 1311.)  Coldwell Banker believed the *Lyon* decision was contrary to legal authorities on which it relied in this action.

In his declaration, a partner with the Gemmill firm stated he was retained as cocounsel to defend Coldwell Banker in this case due to his expertise in defending the real estate brokerage industry, including his appellate experience.  He cited and described three cases that led to the publication of appellate opinions favorable to the interests of Coldwell Banker.  He then explained that one of the arguments he advanced on behalf of Coldwell Banker in this case was that the Tomjanoviches should not prevail against

11

Coldwell Banker as a matter of law because of provisions in the various contracts they signed during escrow. He quoted nine specific provisions including, for example, that the Tomjanoviches were obligated to disclose material facts whether or not Coldwell Banker asked about them; nothing in the contracts relieved the Tomjanoviches from their duty of disclosure; and other similar provisions.

Coldwell Banker believed the *Lyon* opinion potentially exposed Coldwell Banker and other real estate brokers "to unduly broader legal liability relative to their day to day commercial dealings with clients." As it turned out, the jury found in favor of Coldwell Banker on the cross-complaint for breach of fiduciary duty. But the amicus letter was submitted on June 29, 2012, and the trial of this action began in September 2012.

The trial court impliedly believed counsel's declaration that the preparation of the *Lyon* brief was related to Coldwell Banker's defense of the Tomjanoviches' cross-complaint. The court was provided with a copy of the amicus brief, a sworn declaration concerning the overlapping legal issues in *Lyon* and this action, and the relevant billing entries. The Tomjanoviches did not argue to the trial court that, if it contemplated awarding attorney fees related to the amicus brief, the court should not award the entire $9,718 incurred but should award only the portion of the fees the court found to be directly related to this action. If they had asked the court to do so, the court would have been within its discretion to apportion the award in such a way. Having not asked the trial court to consider apportionment of the fees, the argument has been waived.

Counsel for Coldwell Banker acknowledged at oral argument that no published opinion holds the trial court has discretion to award fees incurred to prepare an amicus brief in another action. On the other hand, the Tomjanoviches have not cited any case holding it is an abuse of discretion to award fees for an amicus brief submitted in another action, nor have they explained why we should pronounce such a rule in this case. We do not intend to announce any general rule regarding the propriety of an award of fees incurred to prepare an amicus brief in another action. We simply find that on the record in this case, the court did not abuse its discretion in awarding the fees incurred by the Gemmill firm to prepare the amicus brief in the *Lyon* case.

**DISPOSITION**

The judgment is affirmed.  Respondent is awarded its costs on appeal.


GRIMES, J.

We concur:

BIGELOW, P. J.


FLIER, J.

13